**Carolyn Joyce FORD, Respondent,**

**v.**

**Joseph MATULA, Appellant.**

**No. 24792.**

Kansas City Court of Appeals.

Missouri.

April 1, 1968.

Motion for Rehearing and for Transfer to Supreme Court Denied June 3, 1968.

John M. Kilroy, Don B. Roberson, Kansas City, for appellant.

Robert L. Shirkey, Dale Beal, Austin VanBuskirk, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment for $12,350. Defendant has appealed.

Plaintiff's petition alleged that on September 8, 1965, while operating her automobile westwardly on Gregory Boulevard at its intersection with Troost Avenue in Kansas City, Missouri, the defendant was negligent "in failing to obey the traffic signal lights which were red for traffic proceeding in the direction defendant was traveling, in violation of said Ordinance 58.250" causing plaintiff to sustain serious injuries. The defendant's answer admitted that he was operating a vehicle in a southerly direction on Troost Avenue at the time and place, but denied all other matters in plaintiff's petition.

Plaintiff testified that on September 8, 1965 she was driving westwardly on Greg-

ory towards its intersection with Troost about 10:00 p. m.; that as she approached the intersection the light was red so she stopped in obedience to it; that after the red light had changed to green she looked to her left and right; that as she proceeded into the intersection she saw the defendant's automobile to her right between 100 to 150 feet away traveling at about 20 miles per hour; that this car continued approaching the intersection. When plaintiff realized there was danger of a collision she attempted to increase her speed and get through the intersection. She was unsuccessful. Defendant's automobile struck her car in the right rear.

Defendant testified that he was operating a 1965 Thunderbird when he was involved in an accident with plaintiff's car; that as he approached the intersection of Gregory and Troost he was traveling 20 to 25 miles per hour.

On direct examination defendant was asked:

"Now, there has been testimony there is a traffic light at that intersection, is that a fact? A. Yes. Q. Did you see the traffic light before you got to the intersection? A. Yes. Q. Do you remember what color it was when you first saw it? A. Yellow. Q. All right. What did you do when it turned yellow? A. I took my foot off the gas pedal and just laid it on the brake, but I didn't use the brake because I was quite a ways from the light. Q. This was while you were still north of the intersection? A. Yes. Q. Did the light turn red before you got to the intersection. A. Yes, sir. Q. And approximately how far were you from the intersection when the light went red? A. I would say about two car lengths."

On cross-examination defendant testified:

"Q. Now as you approached the intersection, you saw the light was yellow, didn't you? A. Yes, I did. Q. And you knew the next sequence of light was going to be red, didn't you? A. Yes, I did."

Defendant's sole contention is that the court erred in giving on behalf of plaintiff Instruction No. 3 "since there could be no actionable negligence against the defendant under MAI 17.01 when there had been a failure of proof to establish any duty upon the defendant to obey the traffic signal in evidence."

Instruction No. 3 reads as follows:

"Your verdict must be for the plaintiff Joyce Ford if you believe:

"First, defendant Matula violated the traffic signal, and

"Second, defendant was thereby negligent, and

"Third, as a direct result of such negligence the plaintiff sustained damages."

Defendant states in his brief: "No ordinance was ever offered or entered into evidence, and plaintiff's allegation of a given ordinance purportedly placing specific duties upon the defendant, was not proved or in evidence in any manner. Accordingly the court erred in submitting plaintiff's verdict directing Instruction No. 3, when there was an absence of proof, or evidence establishing a duty, upon which actionable negligence would lie against the defendant."

Defendant's counsel in his opening statement said: "Now, as you know, as you have been told, there is a stop light, traffic light at the intersection. No question about that. There are traffic lights that govern the approach and movement of vehicles through that intersection. * * * Now, there isn't any question about the fact that the traffic light was red for his travel; and there isn't any question about the fact that he applied his brakes and tried to stop, but the brakes failed."

And in his argument to the jury defendant's counsel stated: "Now, gentlemen of the jury, I have never said and Mr. Matula

has never said that he didn't enter the intersection on a red light. He tried to stop and the brakes failed. * * * Now, that he violated the traffic signal. * * * How was he negligent? I know he went into the intersection against a red light. He has never said he didn't. Nobody is saying he didn't. But is it negligence, gentlemen, to lease a car from a reputable company, and drive it, and have a brake failure?"

Under his own testimony and the admissions of his counsel, it is difficult to conceive how defendant could have been prejudiced by the failure of plaintiff to offer in evidence the pleaded ordinance. Note the charging part of the instruction, if, defendant Matula *violated the traffic signal."* And then consider the admission of defendant's counsel: "Now, that *he violated the traffic signal."*

How can defendant contend that there was "a failure of proof to establish any duty" on his part "to obey the traffic signal?"

Over thirty years ago the Supreme Court of Vermont held in the case of Stone v. Wood, 104 Vt. 105, 157 A. 829, that: "In intersectional collision, court should take judicial notice of purpose of automatic traffic lights, since their meaning is common knowledge.

And in a more recent case, McNulty v. Cusack, 104 So.2d 785, the Florida Court of Appeals held that: "The court could take judicial notice of the fact that it was the duty of motorists to stop at the intersecting street when the light was red." In the body of the opinion the Court said:

"In this day of heavy motor traffic all over the nation, the youngest or the most careless motorist knows that it is negligence to go through a red light."

A case quite similar to the instant case is that of Arditi v. Brooks Erection Co., 266 S.W.2d 556, 558, Mo.Sup. There the Court had occasion to consider the plaintiff's failure to prove up an ordinance of the City of St. Louis and the fact that a stop sign had been placed at the corner in question pursuant to said ordinance. Because of the failure of plaintiff's proof on this point the trial court sustained defendant's motion for new trial. The submission by the plaintiff was that the defendant's truck had failed to stop before entering the intersection colliding with the bus in which plaintiff was riding causing her to sustain injuries. They claimed error by defendant was that there was no evidence to submit the ordinance violation charge in the verdict directing instruction. Our Supreme Court said, l. c. 559:

"As stated, it is conceded that the stop sign was there, and no contention is made that it was unlawfully there, so it was one of the circumstances properly to be considered in determining defendant's negligence. * * * Even under defendant's evidence, it makes no difference whether or not Lindell had been designated a boulevard by an ordinance, or under what authority the stop sign was placed there, because its driver recognized that he had the duty to stop, at that time and place, before entering Lindell; and defendant concedes that he had such duty imposed by the circumstances. Nothing could be clearer than that he did have this duty to stop, at this time and place, recognized it and made an effort to do so; whether or not he exercised the highest degree of care to do so soon enough was the real jury issue on negligence under the evidence. Therefore, the question of whether the stop sign was placed there under the authority of an ordinance was not an essential element of plaintiff's case. It did not need to be in the instruction and was mere surplusage."

The Supreme Court remanded the case directing the trial court to reinstate the verdict.

Likewise, in the instant case, "nothing could be clearer than that he (defendant)

did have this duty to stop, * * * recognized it, and made an effort to do so."

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.